| **Harvey v New York Foundling Hosp.** |
|:---:|
| 2025 NY Slip Op 30941(U) |
| March 21, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 453052/2021 |
| Judge: James G. Clynes |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. JAMES G. CLYNES**      PART      **22**

*Justice*

-----------------------------------------------------------------X

VIRGINIA A. HARVEY,

            Plaintiff,

     - v -

THE NEW YORK FOUNDLING HOSPITAL, DARRELL
LAMONT JONES

            Defendant.

-----------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 453052/2021 |
| MOTION DATE | 04/25/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81

were read on this motion to/for      JUDGMENT - SUMMARY      .

Upon the foregoing documents, the motion by Defendants THE NEW YORK FOUNDLING HOSPITAL, DARRELL LAMONT JONES for summary judgment dismissing the Plaintiff's complaint on the ground that Plaintiff has not suffered a serious injury pursuant Insurance Law §5102(d), is granted.

## FACTS

Plaintiff seeks recovery for injuries allegedly sustained as a result of a motor vehicle accident on May 18, 2020 between the Plaintiff and the Defendant Lamont, who was operating a vehicle owned by the defendant hospital that occurred on May 18, 2020 (NYSCEF Doc. No. 50 [summons and complaint]). As is relevant here, plaintiff's Bill of Particulars (NYSCEF Doc. No. 56) alleges injuries as follows:

> HEAD – Posttraumatic occipital headaches.
>
> CERVICAL SPINE – Posttraumatic neck pain radiating to the right side, range of motion limitations, Evidence of right C6 cervical radiculopathy, right paracentral broad-based disc herniation at the C5-6 disc level indenting the thecal sac and foramina abutting the exiting right C6 nerve root.
>
> LUMBAR SPINE – Posttraumatic midback pain to the lower back, range of motion limitations, posttraumatic lower pain radiating to

453052/2021 HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL
Motion No. 002

Page 1 of 10

[* 1]

her bilateral buttocks with pain (increasing with movement, walking and prolonged sitting), evidence of right L5-S1 and left S1 lumbar radiculopathy, right foraminal herniation with annular tear and disc bulge at L4-5 indenting the: thecal sac, lateral recesses and foramina, abutting the bilateral exiting L4 nerve roots with bilateral facet inflammation.

RIGHT SHOULDER – right arm weakness with increased pain with movement and raising of right arm, range of motion limitations, anterior superior labral tear.

RIGHT SHOULDER PROCEDURE performed on October 28, 2020 – surgical arthroscopy of the right shoulder, partial labral debridement, subacromial decompression with distal clavicle resection, acromioplasty, synovectomy, debridement. As a result of the procedure, Plaintiff is claiming: post-surgical scarring, post-traumatic arthritis, severe pain, swelling and tenderness, marked restriction in range of motion, need for future orthopedic care

In addition, Plaintiff's First Supplemental Bill of Particulars (NYSCEF Doc. No. 57) alleges the following:

LUMBAR SPINE procedure performed on January 17, 2022, that consisted of: Lumbar discectomy L3-L4, Lumbar discectomy L4-L5, Lumbar discogram, 2 transforaminal lumbar epidural steroid injections L3-L4. As a result of this procedure, Plaintiff is claiming that she severely suffered, still suffers and will continue to suffer from the following injuries: post-surgical scarring, post-traumatic arthritis, severe pain, swelling and tenderness, restriction in range of motion, need for future surgery.

Plaintiff is not making a loss of wages claim (NYSCEF Doc No. 55 [Deposition Transcript of Plaintiff]). Nor is she alleging that she sustained a serious injury as defined by §5102 of the Insurance Law in either her Bill of Particulars or the Supplemental Bill of Particulars. However, in opposition to the motion, plaintiff relies on the findings of her treating physicians that she has suffered permanent injuries to her right shoulder, lumbar spine, cervical spine, and/or permanent consequential limitation of use of these body parts, and/or significant limitation of use of these body parts.

Defendants support their motion with the affirmed independent examination reports of: Dr. Craig H. Sherman, a Radiologist, dated March 5, 2024 (NYSCEF Doc No. 67); Dr. Andrew

453052/2021 HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL          Page 2 of 10
Motion No. 002

2 of 10

N. Bazos, a board-certified orthopedic surgeon, dated May 29, 2023 (NYSCEF Doc No. 68), and Dr. Daniel J. Feuer, a board-certified neurologist dated March 11, 2023 (NYSCEF Doc. No. 69).

### Dr. Craig H. Sherman - Radiologist

Dr. Sherman reviewed the submitted images and imaging reports of the body parts in chronological order and the Bill of Particulars and the First Supplemental Bill of Particulars. Upon review of the MRI of the cervical spine from Stelton Radiology performed on August 29, 2019, Dr. Sherman found no acute traumatic abnormality; chronic degenerative disc dehydration at C2-C3 and C5-C6; right-sided posterior spondylitis ridge at C5-C6 producing slight indentation on the thecal sac and mild right-sided neural foraminal encroachment; and no disc herniation seen at any level. Upon review of the MRI of the cervical spine from AMDS performed on June 24, 2020, Dr. Sherman found: no acute traumatic abnormality; stable chronic degenerative disc dehydration at C2-C3 and C5-C6; stable slight right-sided spondylosis at C5-C6 producing mild indentation on the thecal sac and slight right-sided neural foraminal encroachment; no disc herniation seen at any level.

Upon review of the MRI of the lumbar spine from Stelton Radiology performed on August 29, 2019, Dr. Sherman found: no traumatic abnormality; chronic disc degeneration and facet arthritis at L4-L5 with slight degenerative annular bulge and dorsal ligamentum flavum thickening producing a mild degree of central canal and right lateral recess stenosis; mild chronic degenerative facet arthritis and slight degenerative annular bulge at L5-S1 protruding into ventral epidural fat; no disc herniation seen at any level. Upon review of the MRI of the lumbar spine from AMDS performed on June 24, 2020, Dr. Sherman found: no traumatic abnormality; stable chronic disc degeneration and facet arthritis at L4-L5 with slight degenerative annular bulge and dorsal ligamentum flavum thickening resulting in a mild degree of central canal and right lateral recess stenosis, stable chronic degenerative annular bulge at L5-S1; no disc herniation seen at any level.

Upon review of the MRI of the right shoulder from AMDS performed on May 29, 2020, Dr. Sherman found: no acute traumatic abnormality; no rotator cuff, labral, or biceps tendon tear; minor subcoracoid bursitis.

### Dr. Andrew N. Bazos – Orthopedic Surgeon

Dr. Bazos, reviewed Plaintiff's Bill of Particulars, records from Dr. Walter F. Pizzi; MRI of the right shoulder dated May 29, 2020; MRI for the cervical spine dated June 24, 2020; MRI of the lumbar spine dated July 2, 2020; electrodiagnostic studies of the upper extremities dated July

453052/2021  HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL          Page 3 of 10
Motion No.  002

3 of 10

8, 2020, by Dr Pizzi; records from HealthEast Medical Group; electrodiagnostic studies of the lower extremities dated September 2, 2020, by Dr. Pizzi; operative report regarding surgical arthroscopy of the right shoulder by Dr. Jason R. Baynes dated October 28, 2020; records from Richmond University Medical Center dated June 17, 2019; records from Dr. Hadassah Orenstein dated August 20, 2019; and electrodiagnostic studies of the upper and lower extremities by Hadassah Orenstein dated August 29, 2019.

Dr. Bazos performed an independent medical examination on the plaintiff on May 4, 2023. Upon review of the medical records and based on the examination of the plaintiff, Dr. Bazos opined that the plaintiff sustained nothing more than minor, self-limited, soft tissue strain injuries to the cervical spine, lumbar spine and right shoulder. Dr. Bazos states that any proposed injury the plaintiff may have sustained is based solely on her history and subjective complaints alone due to the lack of any accident-related objective findings. Dr. Bazos observed that the plaintiff's injuries have been resolved completely, and she requires no additional medical treatment; she is left with no disability or limitations in performing her normal daily activities. Dr. Bazos finds that plaintiff's past medical history is significant for pre-existing neck, lower back and right shoulder injuries; she was treated a few months before the subject accident for neck, lower back, and right shoulder pain as a result of an accident in 2019. When comparing the medical records from before the subject accident to those after the accident, Dr. Bazos finds no change in the plaintiff's baseline level of comfort and function. Dr. Bazos states that the subject accident had no overarching impact on the plaintiff's status of musculoskeletal health, and any ongoing discomfort she might be experiencing is the result of her pre-existing issues and not in any way causally related to the subject accident. Dr. Bazos concludes in his examination that the plaintiff sustained at most minor, self-limited, soft tissue strain injuries to the cervical spine, lumbar spine and right shoulder and these injuries would have resolved fully within just a few weeks with conservative management based on known biologic properties; the right shoulder surgery performed was not medically necessary as a result of the accident in question; any ongoing discomfort she might be experiencing is the result of her pre-existing issues and not anything causally related to the subject accident. Dr. Bazos also found that the plaintiff has made a full recovery from her injuries and requires no additional treatment; she is left with no disability or limitations in performing her normal daily activities as it relates to the subject incident.

453052/2021   HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL        Page 4 of 10
Motion No.  002

4 of 10

## Dr. Daniel J. Feuer - Neurologist

Dr. Feuer reviewed Plaintiff's Bill of Particulars of the prior accident (Index # 725381/2020); medical records from Dr. Walter Pizzi; MRI reports of the right shoulder dated May 29, 2020, cervical spine dated June 24, 2020, and lumbar spine dated July 2, 2020; EMG/NCV report of the upper extremities dated July 8, 2020; EMG/NCV report of the lower extremities dated September 2, 2020; medical records and evaluation reports of Dr. Jason Bynes from Health Medical Alliance; Procedure note dated October 28, 2020 from Dr. Baynes of the surgical arthroscopy of the right shoulder; Richmond University Medical Center medical records; EMG/NCV report of the upper and lower extremities dated August 29, 2019, Hadassah Orenstein, MD. - Impression: The above electrodiagnostic study reveals evidence of a severe bilateral carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory components. The above electrodiagnostic study reveals no evidence of lumber or cervical radiculopathy. In his report, Dr. Feuer, noted that plaintiff's present neurological examination is within normal limits; motor, reflex and sensory examinations are within normal limits. Dr. Feuer found no objective clinical deficits referable to the central or peripheral nervous system to support her subjective complaints. Dr. Feuer found no objective clinical deficits to support a diagnosis of radiculopathy. Dr. Feuer observed that plaintiff was not undergoing active therapy treatments or taking pain medications at the time of the examination. In conclusion, Dr. Feuer finds that plaintiff does not demonstrate any objective neurological disability or neurological permanency; she is neurologically stable to engage in full active employment as a technician, as well as the full activities of daily living without restriction.

In support of their motion, Defendants submit that plaintiff was involved in a prior motor vehicle accident that occurred on March 30, 2019 – approximately 14 months prior to the subject May 18, 2020, motor vehicle accident, and argue that the injuries alleged by plaintiff in the subject litigation were pre-existing and stem from her prior motor vehicle accident which occurred on March 30, 2019 (NYSCEF Doc No. 48 [Affirmation of Matthew Kelly, Esq.] ¶¶ 16-32).

Defendants also point to a questionnaire signed by plaintiff, at a visit following the March 30, 2019 accident with Dr. S. Ramachandran Nair dated April 3, 2019. In it, plaintiff complained of severe pain that affected her ability to lift heavy weights, prolonged sitting and standing, and sleeping; very bad headaches; pain in her neck that affected her ability to drive; she was unable to do her usual work, her injuries cause a moderate problem walking on flat surfaces up to a half

453052/2021 HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL
Page 5 of 10
Motion No. 002

[* 5]
5 of 10

more and moderate problem with stairs (NYSCEF Doc No. 60 [ Pre-accident questionnaire from Dr. Ramachandran]).

Another initial examination report from Dr. Hadassah Orenstein dated August 23, 2019, reflects that plaintiff complained of pain in her neck, lower back and right shoulder. The report indicated that plaintiff's pain was aggravated by activities of daily living including walking, climbing stairs, standing, sitting, bending, lifting, reaching, chores and working. Physical examination demonstrated severe restricted range of motion with pain to the cervical spine, lumbar spine and right shoulder. Diagnostic impressions listed in the report included cervical disc disorder with radiculopathy; myalgia; intervertebral disc disorders with radiculopathy in the lumbar region and shoulder pain (NYSCEF Doc No. 61 [pre-accident initial examination report from Dr. Orenstein]).

The pre-accident lumbar spine MRI report from Stelton Radiology, dated August 29, 2019, revealed mild dextroscoliosis; a central subligamentous disc herniation superimposed upon annular bulging with thecal sac compression and bilateral foraminal stenosis at the L4-L5 level; and central subligamentous disc herniation with thecal sac compression at the L5-S1 level. (NYSCEF Doc No. 62, pre-accident lumbar spine MRI report).

Additionally, according to a report from Body Acupuncture PC, dated September 10, 2019, plaintiff reported pain in her neck, lower back and right shoulder. The report noted tenderness upon palpation and pain upon flexion/extension in her cervical spine; tenderness upon palpation and pain on motion of the trunk/ flexion/ extension/ rotation of the lumbar spine; and tenderness upon palpation and restricted range of motion in the right shoulder. The diagnostic impression was sprain of the ligament of the cervical spine; sprain of the lumbar spine and pelvis; and sprain of the right shoulder (NYSCEF Doc No. 63 [pre-accident medical report from Body Acupuncture PC]).

Further, the records from Morning Star Physical Therapy also confirm that plaintiff was receiving physical therapy on her neck, lower back and right shoulder in March 2020. A physical therapy re-evaluation report dated March 5, 2020 noted that plaintiff continued to have radiating right shoulder pain, neck pain, low back pain (NYSCEF Doc No. 64 [pre-accident physical therapy records from Morning Star Physical Therapy]).

Also, in a report from Dr. Kotkes, dated February 20, 2020, plaintiff complained of low back pain and neck pain/cervicalgia due to the March 30, 2019 motor vehicle accident. Physical

**453052/2021  HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL**          **Page 6 of 10**
**Motion No.  002**

[* 6]

examination revealed range of motion restrictions. Due to the on-going lower back complaints, Dr. Kotkes administered a trigger point injection to the lumbar spine on February 20, 2020 (NYSCEF Doc No. 65 [pre-accident medical records from Dr. Kotkes]).

Finally, when plaintiff returned to Dr. Kotkes on March 19, 2020, she continued to complain of low back pain and neck pain/cervicalgia. Plaintiff rated her low back pain as 9 out of 10. Physical examination again revealed severe restricted range of motion in her cervical spine and lumbar spine. Dr. Kotkes diagnosed plaintiff with L4-S1 disc herniations; cervicalgia; lumbar radiculopathy; and lumbar intervertebral disc displacement. Notably, Dr. Kotkes recommended interventional pain management procedures including a percutaneous lumbar discectomy and annuloplasty, epidural injections and trigger point injections. Dr. Kotkes administered a lumbar epidural steroid injection with fluoroscopy, and a lumbar epidurogram and a trigger point injection on March 19, 2020 (NYSCEF Doc No. 66 [pre-accident medical records from Dr. Kotkes]).

In opposition, Plaintiff submits her own affirmation describing the May 18, 2020 accident, the claimed injuries, and the resulting medical treatments (NYSCEF Doc No. 73 [Plaintiff's affidavit]). Plaintiff avers that on May 18, 2020, she was involved in a motor vehicle accident where, and as a result she claims that she injured her right shoulder, lumbar spine, and cervical spine. She states that after the accident, she drove herself to Hylan Urgent Care where due to Covid-19 restrictions, she was seen virtually by Dr. Walter Pizzi where she claims that she was examined and recommended physical therapy. Plaintiff started treatment with physical therapy, acupuncture, and chiropractic treatment for her cervical spine, lumbar spine and right shoulder. After several weeks, when she was still having complications, she was referred for MRIs.

Plaintiff states that Dr. Pizzi discussed the MRI results with her and was told that she had issues with her right shoulder, cervical spine and lumbar spine and was referred to an Orthopedist for her right shoulder. Plaintiff states that she underwent right shoulder surgery on October 28, 2020, and that she was still experiencing pain and was limited in her range of motion to her right shoulder following the surgery. Additionally, plaintiff claims that the pain in her neck and back was not subsiding although she was continuously receiving her therapy. She states that Dr. Apazidis who performed a range of motion testing, noted severe limited range of motion to her cervical spine and lumbar spine, and Dr. Apazidis recommended a cervical spine discectomy, but she did not follow up on this recommendation. Plaintiff affirms that on January 17, 2022, she underwent a lumbar spine discectomy and two epidural steroid injections. She claims that she

453052/2021   HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL          Page 7 of 10
Motion No. 002

7 of 10

continues to have pain in her right shoulder, cervical spine and lumbar spine. Plaintiff contends that she utilizes a cane and a back brace when the pain and discomfort are overwhelming, and she takes over the counter medications to help alleviate the pain.

Plaintiff concedes that she was involved in a motor vehicle accident on March 30, 2019, in which she sustained injuries to her cervical spine and lumbar spine and underwent a lumbar spine epidural injection. She claims that the last date of treatment for the March 30, 2019 accident was approximately in March of 2020 and that she was living pain and symptom free up to the time of the May 2020 accident. However, this account is contradicted by the multiple medical reports described about and the other documents submitted by the defendants, some of them signed by plaintiff herself. Notably, nowhere does her affidavit state that she revealed the earlier accident to her treating medical providers, who did not treat her for the injuries sustained therein.

Plaintiff also submits an affirmation from her own surgeon, Jason R. Baynes (NYSCEF Doc No 78). Dr. Baynes' review of records included various reports from Drs. Pizzi, Baynes, Harold Delaleu, and the MRI films and the results of Plaintiff's other diagnostic tests. He concluded that there was a direct causal relationship between the motor vehicle accident of May 18, 2020, and the injury to the right shoulder. Dr. Baynes also recounts plaintiff told him that she had no problem with her right shoulder and arm prior to the 2020 accident but experienced permanently decreased range of arm motion and shoulder weakness afterwards.

However, Dr. Baynes fails to make any mention of the 2019 accident or its relationship to her injuries. In particular, he does not address the MRIs showing degenerative conditions in her cervical, lumbar spine and right shoulder, the medical records reflecting a history of chronic neck, back and shoulder pain, or the records demonstrating that surgery was recommended before the 2020 accident.

## DISCUSSION

The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (*Winegrad v New York University Medical Center*, 64 NY2d 851, 853 [1985]). Once this showing has been made, the burden shifts to the non-moving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution (*Licari v Elliott*, 57 NY2d 230 [1982]). Failure to make such a showing requires denial of the motion, regardless of the sufficiency of the opposing papers (*see*

**453052/2021 HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL**                    **Page 8 of 10**
**Motion No. 002**

*Winegrad* at 853). In reviewing the motion, the court "must view the evidence in the light most favorable to the nonmoving party, including drawing all reasonable inferences in favor of the nonmoving party" (*Vega v Metropolitan Transp. Auth.*, 212 AD3d 587, 588 [1ˢᵗ Dept 2023]).

In order to satisfy the burden under Insurance Law 5102 (d), a plaintiff must meet the "serious injury" threshold (*Toure v Avis Rent a Car Sys.*, 98 NY2d 345, 352 [2002] [finding that in order to establish a prima facie case that a plaintiff in a negligence action arising from a motor vehicle accident did sustain a serious injury, plaintiff must establish the existence of either a "permanent consequential limitation of use of a body organ or member [or a] significant limitation of use of a body function or system"]). The movant bears the initial burden to establish that the plaintiff has not sustained a serious injury (*Bray v Rosas*, 29 AD3d 422 [1st Dept 2006] *citing Rodriguez v Goldstein*, 182 AD2d 396 [1st Dept 1992]). Such evidence includes affidavits or affirmation of medical experts who examined the plaintiff and conclude that no objective medical findings support the plaintiff's claim" (*Spencer v Golden Eagle, Inc.*, 82 AD3d 589, 590 [1st Dept 2011] [internal quotation marks and citations omitted]). Finally, "[o]nce the defendant meets [their] initial burden, the plaintiff must then demonstrate a triable issue of fact as to whether … [they] sustained a serious injury" (*Spencer*, 82 AD3d at 590).

In view of the evidence above, Defendants have made a prima facie showing that plaintiff did not suffer a serious injury as a result of the subject accident with evidence that plaintiff had normal range of motion in her neck, back and right shoulder, that she had preexisting injuries to each of those parts resulting from the prior accident (*see Mitrotti v Elia*, 91 AD3d 449 [1st Dept. 2012]). Plaintiff has not rebutted that showing, and her submissions are insufficient to raise a triable issue of fact as to whether the 2020 accident was the cause of her injuries. Her expert's conclusory affidavit does not explain why Plaintiff's preexisting conditions could not have been the cause of her current complaints (*see Monahan v Reyes*, 184 AD3d 460 [1st Dept 2020]; *Marino v Amoah*, 143 AD3d 541 [1st Dept. 2015]; *Jimenez v Polanco*, 88 AD3d 604 [1st Dept 2011]).

Moreover, the Plaintiff's current complaints, as set forth in her affidavit, while suggestive of discomfort, do not suggest the inability to perform substantially all of her usual and customary daily activities (see *Berk v Lopez* 278 AD2d 156 [1st Dept. 2000]). Nor is there any evidence that plaintiff was sufficiently limited in her activities outside of her employment so as to satisfy this threshold (*id.*) Finally, Plaintiff's 90/180- day claim is defeated by the lack of evidence showing

453052/2021   HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL          Page 9 of 10
Motion No. 002

9 of 10

a causal nexus between the accident and the injury (see *Sanchez v Steele*, 149 AD3d 459 [1st Dept. 2017]).

Accordingly, it is

ORDERED that defendants' motion for summary judgment is granted and the complaint is dismissed; and it is further

ORDERED that the Clerk is directed to enter judgment accordingly.

This constitutes the Decision and Order of the Court.

| 3/21/2025 | | | |
|-----------|--|--|--|
| DATE | | JAMES G. CLYNES, J.S.C. | |

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|----------------------|---|
| | X | GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ | SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ | INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

453052/2021   HARVEY, VIRGINIA A. vs. THE NEW YORK FOUNDLING HOSPITAL ET AL          Page 10 of 10
Motion No. 002

10 of 10